## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JACQUELYN HOPKINS,** | |
| *Plaintiff*, | **Civil Action No. 15-7454** |
| v. | **OPINION** |
| **KUEHNE + NAGEL INC.; MAREN DEDERMANN; ABC CORPORATIONS (1-10); JOHN and JANE DOES (1-10),** | |
| *Defendants.* | |

      **THIS MATTER** comes before the Court by way of Defendant Kuehne + Nagel Inc.'s ("K+N") and Defendant Maren Dedermann's ("Dedermann" or together with K+N, "Defendants") motion for partial summary judgment against Plaintiff Jacquelyn Hopkins ("Plaintiff" or "Hopkins"). ECF No. 50. Plaintiff opposes the motion. ECF No. 51. For the reasons stated below, the motion is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

      In this employment dispute, Plaintiff alleges that Defendants discriminated against her because of her age and her disability. Plaintiff further alleges that Defendants subjected her to a pattern of continuous and ongoing harassment, which ultimately culminated in her constructive discharge.

### A. Employment at K+N

      Plaintiff was born on March 5, 1961. Defs.' Stmt. of Facts ¶ 1, ECF No. 50-2.[1] She was

---

[1] The facts are taken from Defendants' Statement of Undisputed Facts and Plaintiff's Counter-Statement of Undisputed Facts. The facts are undisputed unless otherwise noted. Moreover, where facts in a party's statement are supported by evidence in the record and denied by the opposing

hired to work in K+N's accounting department in 1985.  Id. ¶ 2.  In 1995, Plaintiff began working as a brokerage clerk in K+N's import department and became an Import Coordinator in 1999.  Id. ¶¶ 76–77.  She was supervised directly by the Import Supervisor, who reported to the Import Manager.  Id. ¶ 79–80.

In August 2012, Maren Dedermann became the Import Manager.  Id. ¶ 95.  Towards the end of 2012, Dedermann informed Plaintiff that the Import Department had received a "low" grade for opening files; as a result, Dedermann told Plaintiff that she needed to take on that task.  Id. ¶ 111.  Although Plaintiff was uncomfortable with opening new files, she told Dedermann that she would do it until someone else was hired.  Id. ¶ 111.  Dedermann reassigned five of Plaintiff's clients to another Import Coordinator because she noticed that Plaintiff was unable to handle as much work as her colleagues.  Id. ¶ 116.  Plaintiff continued working with her remaining four clients and did not complain to human resources about opening new files.  Id. ¶¶ 117, 123.  Because Plaintiff was opening files in addition to her regular work, she often stayed late to complete her work.  Pl.'s Counter Stmt. ¶ 20.  Though her job title and base pay did not change, Plaintiff later received a two percent raise instead of the usual annual four percent because she needed to "process more shipments per month."  Hopkins Dep. Tr. 104–06.

At some point prior to May 2013, Plaintiff told Dedermann that she and her boyfriend made a nice couple.  Defs.' Stmt. ¶ 126.  She also told Dedermann that she "should make beautiful children."  Id. ¶ 127.  Dedermann replied that Plaintiff could be her babysitter when she retired.  Id. ¶ 128.  Plaintiff did not complain to anyone inform human resources about Dedermann's comment.  Id. ¶¶ 129–30.

---

party without citation to conflicting evidence, the Court deems such facts undisputed.  See Fed. R. Civ. P. 56(e)(2)–(3); Carita v. Mon Cheri Bridals, LLC, 10-2517, 2012 WL 2401985, at *3 (D.N.J. June 25, 2012).

On the morning of May 28, 2013, Plaintiff experienced dizziness during her morning commute and left work early. Id. ¶¶ 133–35. Plaintiff took paid vacation days on May 28, 30, and 31, and took a paid sick day on May 29. Id. ¶¶ 136–37. On May 30, 2013, Plaintiff saw her primary care physician, Dr. Parnes, who diagnosed her with a Transient Ischemic Attack ("TIA"). Pl.'s Counter Stmt. ¶ 38. Plaintiff went for a series of medical tests after she saw Dr. Parnes. Defs.' Stmt. ¶ 140. Plaintiff's echocardiogram, CT scan, and carotid artery test came back negative for a TIA. Defs.' Stmt. ¶¶ 143–45. Plaintiff testified that she was not aware of any test that demonstrated that a TIA definitively occurred. Id. ¶ 146.

Plaintiff returned to work on June 3, 2013. Id. ¶ 150. On days that she had follow-up medical testing, Plaintiff used paid vacation days because she had already utilized her sick days for the year. Id. ¶¶ 151–55, 169. However, Dedermann failed to keep Plaintiff's accrued time current, which complicated her ability to take time off. Id. ¶ 43. Plaintiff did not indicate that she was taking time off to go to the doctor, id. ¶ 157, and never told her immediate supervisor, Susan Marme ("Marme"), how often she was going to the doctor, id. ¶ 161. Around this time, Dedermann assigned Plaintiff three or four new customers because the sales team had brought in new business. Id. ¶¶ 174–75. Plaintiff verbally complained to Dedermann that she was still required to open new files. Id. ¶ 177.

In January 2014, Plaintiff received a performance rating of 6.5 out of 10 during her review, which falls between "fully satisfactory" and "excellent." Id. ¶¶ 181–82. Plaintiff had received a performance rating of 6.0 the prior year. Id. ¶ 183. According to Plaintiff, Dedermann commented about Plaintiff's attendance during her review and told her that she didn't care that Plaintiff had been sick. Id. ¶ 180; Pl.'s Counter Stmt. ¶ 31. Plaintiff's review form also indicated that her "attendance was an issue" and "needs to approve in 2014 – lots of unplanned days out of the

office." Defs.' Stmt. ¶ 186.  Plaintiff signed her review and never complained about Dedermann's alleged comments.  Id. ¶¶ 187, 189.

On March 26, 2014, Plaintiff saw Dr. Parnes because she believed she was having heart palpitations.  Id. ¶ 194.  Plaintiff used a vacation day and did not tell anyone at K+N about her palpitations.  Id. ¶¶ 195–96.  By March 31, 2014, Plaintiff had exhausted her allotment of annual sick days.  Id. ¶¶ 191–93.  Thus, Plaintiff requested two half days of vacation via K+N's time management system for additional medical testing.[2]  Id. ¶¶ 197–98.  In her request, Plaintiff indicated that she was getting a heart monitor and an echocardiogram.  Id. ¶¶ 199–200.  Plaintiff's request for two half days was ultimately approved.  Id. ¶ 201.  After the first day of testing, however, Plaintiff advised Marme that she would need to take two full days of vacation.  Id. ¶¶ 203–04.

When Plaintiff returned to work on April 3, 2014, Dedermann told Plaintiff that they had to talk because Plaintiff had used all of her sick time.  Id. ¶ 206.  According to Plaintiff, Dedermann became loud and intimidating.  Id.  Nevertheless, Plaintiff later admitted that Dedermann's behavior was not inappropriate.  Id. ¶ 214.  Dedermann advised Plaintiff that she wanted her "written up with a final warning."  Defs.' Ex. FF; see Hopkins Dep. Tr. 174:5–10.  Following their conversation, Plaintiff complained to Nadine Jones ("Jones") in K+N's compliance department about the incident with Dedermann.  Defs.' Stmt. ¶ 218.  Jones told Plaintiff that she would document the issue and discuss it with upper management.  Id. ¶¶ 226–27.  Several days later, David Beegle ("Beegle"), the Human Resources Business Partner at K+N, informed Plaintiff that she had exceeded her allotted sick days.  Id. ¶ 231.  Plaintiff claims that she was given a piece of

---

[2] Pursuant to K+N policy, vacation days must be pre-approved by management.  Defs.' Stmt. ¶ 202.

paper to sign during their meeting, but she did not read it and was not given a copy. Id. ¶¶ 232–35. After that meeting, no one ever spoke to Plaintiff about her potential termination. Id. ¶ 237.

Shortly thereafter, Plaintiff met with Beegle to discuss her Dedermann complaint. Id. ¶¶ 258–59. Beegle then interviewed six employees of varying races, genders, national origins, and ages. Id. ¶¶ 269–70. Beegle also interviewed Dedermann. Id. ¶ 272. Beegle ultimately concluded that Dedermann should be coached to control her emotions when dealing with conflict. Id. ¶ 276. While all six employees interviewed felt that there was "some sort of favoritism" within the department, Beegle did not find that any protected class consistently received favoritism. Defs.' Ex. HH. As such, Beegle found Plaintiff's allegation that national origin, age, and race impacted treatment of employees to be uncorroborated. Defs.' Stmt. ¶ 275. Beegle subsequently counseled Dedermann regarding K+N's policies and specifically told her that retaliating against employees who make complaints was prohibited. Id. ¶¶ 277–79, 281. In addition, Dedermann completed a workplace harassment training course. Id. ¶ 280. Upper management declined to otherwise discipline Dedermann and Plaintiff was never informed of the investigation's outcome. Pl.'s Counter Stmt. ¶¶ 67, 70. From then on, however, Dedermann's interactions with Plaintiff were limited to business-related issues. Defs.' Stmt. ¶ 290. Dedermann did not criticize Plaintiff's work performance or show any anger towards her. Id. ¶¶ 294–95. Plaintiff made no further complaints to human resources or compliance about Dedermann or anyone else. Id. ¶¶ 297–98.

Around this time, Beegle suggested that Plaintiff take intermittent leave under the Family and Medical Leave Act ("FMLA"). Id. ¶ 299. Cigna ultimately approved Plaintiff's request for the period of April 2, 2014 to October 1, 2014. Id. ¶¶ 304–05. No one at K+N gave Plaintiff a difficult time about her application. Id. ¶¶ 308–09. However, instead of using her approved FMLA

time, Plaintiff used vacation time when she needed days off.  Id. ¶¶ 310–11.  Plaintiff was never disciplined for this practice.  Id. ¶¶ 312–15.

On October 3, 2014, Plaintiff was offered the position of logistics manager for Safe Food Corporation.  Id. ¶ 316.  Though the position came with fewer benefits, a lower salary, and additional travel time, Plaintiff resigned from K+N several hours after receiving the offer.  Pl.'s Counter Stmt. ¶ 75.  In an e-mail to Dedermann, Plaintiff noted that K+N would "always be not just a work place . . . but a family."  Defs.' Stmt. ¶ 320.  She also explained that she was seeking different opportunities, including "some additional schooling."  Id.  Plaintiff later testified that the explanation provided in her e-mail was an accurate summary of why she decided to resign.  Id. ¶ 322.  Plaintiff also confirmed that no one at K+N forced or threatened her to resign.  Id. ¶¶ 325–328.

Although Plaintiff could not identify any specific incident with Dedermann that pushed her to leave, she maintained that she felt uncomfortable at the time of her resignation because "the level of trust" between them had broken down.  Id. ¶ 330–31.  Nevertheless, Plaintiff never told anyone at K+N that she was considering resigning because of the situation with Dedermann.  Id. ¶ 348.  During Plaintiff's exit interview, Plaintiff told Beegle that she was moving on to other things.  Id. ¶ 351.  Moreover, when Beegle asked Plaintiff whether she wanted to work elsewhere within the company, Plaintiff declined his offer.  Id. ¶¶ 352–53.  During her deposition, Plaintiff stated that she currently experiences anxiety because of everything that occurred at K+N.  Hopkins Dep. Tr. 485:3–13.

### B. Procedural History

Plaintiff initiated this lawsuit on October 14, 2015.  See ECF No. 1.  On December 18, 2015, Defendants filed a Motion for Partial Dismissal of Plaintiff's Complaint.  ECF No. 3.  On

June 29, 2016, the Court granted Defendants' Motion in part and dismissed Plaintiff's federal and state overtime claims without prejudice. See ECF No. 10. Plaintiff then filed an Amended Complaint on July 12, 2016. Am. Compl., ECF No. 13. Plaintiff's Amended Complaint asserts causes of action for: (1) violations of the FMLA for failure to offer Plaintiff FMLA leave and for subjecting Plaintiff to a pattern of continuous harassment which led to her constructive discharge; (2) violation of the New Jersey Law Against Discrimination ("NJLAD" or "LAD") for unlawful discrimination on the basis of her gender, age, disability, and/or national origin[3]; (3) violation of NJLAD for creating a hostile work environment; (4) violation of the Fair Labor Standards Act ("FLSA") for failure to pay overtime compensation[4]; (5) violation of the New Jersey Wage and Hour Law ("NJWHL") for failure to pay overtime compensation; and (6) intentional infliction of emotional distress. Am. Compl. ¶¶ 58–101. Defendants answered the Complaint, ECF No. 176, and now seek summary judgment on all claims except the timely overtime claims brought under the FLSA and NJWHL, ECF No. 50.

## II. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with available affidavits, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[S]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for

---

[3] On March 29, 2018, Plaintiff's claims of gender and national origin discrimination were dismissed via Consent Order. ECF No. 49.
[4] On September 12, 2016, the parties agreed that Plaintiff's overtime claims would be limited to the period of October 14, 2012 through October 8, 2014. ECF No. 20.

the nonmoving party." <u>Miller v. Ind. Hosp.</u>, 843 F.2d 139, 143 (3d Cir. 1988). All facts and inferences must be construed in the light most favorable to the non-moving party. <u>Peters v. Del. River Port Auth.</u>, 16 F.3d 1346, 1349 (3d Cir. 1994).

## III. ANALYSIS

### A. FMLA Claims

#### 1. Constructive Discharge

Defendants contend that they are entitled to summary judgment on Plaintiff's constructive discharge claim because Plaintiff has not shown that she was subjected to objectively intolerable conditions. Defs.' Br. at 12–16. The Court agrees.

To establish a claim for constructive discharge, Plaintiff must show that Defendants "knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." <u>Gross v. Exxon Office Sys. Co.</u>, 747 F.2d 885, 888 (3d Cir. 1984). "Intolerability . . . is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign–that is, whether [she] would have had no choice but to resign." <u>Tanganelli v. Talbots, Inc.</u>, 169 F. App'x 124, 127 (3d Cir. 2006) (internal quotation marks omitted); <u>see</u> <u>McDonough v. Cooksey</u>, 05-cv-00135 (JHR), 2007 WL 1456202, at *10 (D.N.J. May 15, 2007) ("[Intolerable] conduct includes an employer forcing an employee to choose 'demotion, termination or resignation' without justification.").

Here, however, no reasonable trier of fact could find the conditions of Plaintiff's employment so intolerable as to compel her resignation. Plaintiff claims to have experienced a continuous pattern of harassment and discrimination, Am. Compl. ¶ 62, but it is undisputed that Dedermann only raised her voice while speaking with Plaintiff <u>once</u> during Plaintiff's twenty-nine years at K+N. While Dedermann's threat to write Plaintiff up "with a final warning" might have

made Plaintiff uncomfortable, it would not compel a reasonable person to resign. See Duffy v. Paper Magic Grp. Inc., 265 F.3d 163, 169 (3d Cir. 2001) (finding that conditions that made a job "more stressful, but not unbearable" were not "objectively intolerable"). Moreover, Plaintiff's allegations of continued harassment by Dedermann after their single incident are unsupported by the record, as it is undisputed that their interactions were limited following their dispute. See Defs.' Stmt. ¶¶ 290–98. Plaintiff alleges that Dedermann harassed her when she requested time off, but it is undisputed that there were no issues with Plaintiff's absences in the fall of 2014 prior to her resignation. Id. ¶ 333. Plaintiff also fails to identify a single specific incident with Dedermann that pushed her to resign. Id. ¶¶ 330–32.

In addition, the circumstances surrounding Plaintiff's exit from K+N only further bely her claim that the environment was "so toxic" that she had no choice but to resign. It is undisputed that during Plaintiff's exit interview, she was asked, "Are you sure you want to leave? Do you want to go to JFK office? Do you want to go to export?" Id. ¶ 352. Yet, Plaintiff declined K+N's offers. Accordingly, nothing that Plaintiff endured comes close to being "outrageous, coercive [or] unconscionable" such that a reasonable person would have resigned. Devine v. Prudential Ins. Co. of Am., 03-3971 (FLW), 2007 WL 1875530, at *25 (D.N.J. June 28, 2007). Defendants are therefore entitled to summary judgment on Plaintiff's constructive discharge claim.

## 2. Failure to Advise

Plaintiff also argues that K+N violated the FMLA by failing to advise her of her right to take FMLA leave. Defendants maintain that Plaintiff failed to request FMLA leave pursuant to

K+N's policies, but in any event, has not shown that she was prejudiced by any alleged failure of Defendants. The Court agrees.

Under the FMLA, "[a] cause of action exists where an employer interferes with an employee's exercise of FMLA rights." Matthews v. N.J. Inst. of Tech., 772 F. Supp. 2d 647, 657 (D.N.J. 2011). To establish an interference claim based on the failure to advise an employee of her rights under the FMLA, a plaintiff must show that the defendant's failure caused her prejudice or injury. Hansler v. Lehigh Valley Hosp. Network, 798 F.3d 149, 157 (3d Cir. 2015); Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 143 (3d Cir. 2004); see also Bravo v. Union Cty., 12-2848 (DRD), 2013 WL 2285780, at *9 (D.N.J. May 23, 2013) ("[M]ere technical FMLA violations are not actionable.").

Here, Plaintiff has not met her burden of demonstrating prejudice. Plaintiff argues that she "would have been terminated" at Dedermann's recommendation if the compliance department had not been alerted to her medical situation and subsequently recommended intermittent FMLA leave. Pl.'s Opp. at 34. Yet, Plaintiff was never actually terminated by K+N. Moreover, after Plaintiff's request for leave was granted, she declined to use it and instead chose to use paid vacation days for her occasional absences between May and October of 2014. Defs.' Stmt. ¶¶ 310–11. It is undisputed that Plaintiff was never disciplined or reprimanded for missing work on a day that should have been treated as FMLA leave. Id. ¶ 312.

Had Plaintiff been informed of the possibility of taking FMLA at an earlier date, she might have avoided the comments in her January 2014 review relating to her poor attendance. Nevertheless, Plaintiff was not suspended or demoted because of her attendance issues; nor did she did lose wages or suffer any other monetary loss. See Sweet v. Cty. of Gloucester, 15-282 (RMB/AMD), 2016 WL 3448275, at *8–9 (D.N.J. June 15, 2016). Instead, Plaintiff received a

higher rating overall than the year prior. Though Plaintiff alleges that she suffered "emotional and physical harm" because of Defendants' failure to offer her the opportunity to retroactively apply FMLA leave to her prior absences, Am. Compl. ¶¶ 62–63, there is no evidence in the record to support such a claim. Regardless, "any emotional damages suffered by the Plaintiff are not compensable under the FMLA." Id. at *8 n.4; see Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002). Accordingly, Defendants' Motion for summary judgment is granted with respect to Plaintiff's FMLA interference claim.

### B. NJLAD Claims

#### 1. Statute of Limitations

As an initial matter, Defendants contend that nearly all of Plaintiff's allegations of discrimination are time barred. The Court agrees but finds Plaintiff's allegation regarding her initial change in responsibilities to be timely.

Claims brought under the NJLAD are subject to a two-year statute of limitations. N.J.S.A. 2A:14-2(a); Brown v. R.R. Grp. Ltd. Liability Co., 1:16-cv-04602-NLH-AMD, 2017 WL 1365215, at *1 (D.N.J. Apr. 7, 2017). NJLAD claims begin "to accrue on the date the incident occurred, or when an injured party knows or should have known that there is a basis for an actionable claim." West v. City of Newark, 07-01009 (SDW), 2007 WL 3232587, at *2 (D.N.J. Oct. 31, 2007). The statute of limitations can be tolled in the event of a continuing violation—a violation that is "sufficiently related to incidents that fall within the statutory period or are part of a systematic policy . . . of discrimination that took place, at least in part, within the period." National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002). However, discrete "[a]cts 'such as termination, failure to promote, denial of transfer, or refusal to hire'" do not toll the statute

of limitations.  Cox v. Scholastic Book Fairs, 05-4190 (RBK), 2006 WL 1228615, at *4 (D.N.J. May 5, 2006) (quoting Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 19 (2002)).

Plaintiff filed her initial complaint on October 14, 2015.  See ECF No. 1.  Therefore, Plaintiff's allegations of discrete acts that occurred prior to October 14, 2013 are barred as untimely.  See Am. Compl. ¶¶ 12, 21, 23 (listing alleged demotions, transfers, or denials of promotion).  Plaintiff's change in responsibilities towards the end of 2012, however, falls within the continuing violation doctrine.  Because it was not a clear-cut "demotion," the discriminatory nature of the act was not apparent at the time it occurred.  See Cox, 2006 WL 1228615, at *4.  Rather, Dedermann tasked Plaintiff with opening new files and Plaintiff saw it as a temporary assignment.  Despite later complaints about her workload—made during the statute of limitations period—Plaintiff remained responsible for opening new files.  As such, the Court finds the initial change in Plaintiff's responsibilities to be sufficiently related to the alleged discrimination in the form of the alleged "demotion" that took place within the statute of limitations.   This allegation is therefore timely.

## 2.  Discrimination Claims

To the extent that Plaintiff's discrimination allegations are timely, Defendants nevertheless maintain that Plaintiff has failed to demonstrate that her alleged demotion was discriminatory.  The Court agrees.

The NJLAD prohibits unlawful discrimination based on age, N.J.S.A. 10:5–12(a), as well as unlawful discrimination because of one's disability, N.J.S.A. 10:5–4.1.  NJLAD claims are subject to the McDonnell Douglas burden-shifting framework.  Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 546 (2013) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 793 (1973)).  Under this framework, a plaintiff must first establish a prima facie case of unlawful action by the

employer.  <u>McDonnell Douglas</u>, 411 U.S. at 802.  If the plaintiff meets this initial burden, the burden shifts to the defendant, who must articulate legitimate, non-discriminatory reasons for its employment decision.  <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506-07 (1993); <u>Makky v. Chertoff</u>, 541 F.3d 205, 214 (3d Cir. 2008).  Once the employer meets its burden of articulating a legitimate, non-discriminatory reason, the burden again shifts to the employee to present evidence from which a factfinder could infer that the proffered reasons were pretextual.  <u>Jones v. Sch. Dist. of Philadelphia</u>, 198 F.3d 403, 410 (3d Cir. 1999).

### a. Age Discrimination

To establish a prima facie case of age discrimination under the NJLAD, a plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) that the employer took the adverse action because of the plaintiff's age.  <u>Farmer v. Camden City Bd. of Educ.</u>, 03-685 (JBS), 2005 WL 984376, at *10 (D.N.J. Mar. 28, 2005).  The parties do not dispute that the first two prongs of the prima facie case are met.

As for the third prong, the Court finds that Plaintiff has established—albeit narrowly—that she suffered an adverse employment action for purposes of a prima facie case.  An "adverse employment action is defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." <u>Burlington Indust., Inc. v. Ellerth</u>, 524 U.S. 742, 761 (1998); <u>Durham Line Ins. Co. v. Evans</u>, 166 F.3d 139, 152–53 (3d Cir. 1999).  While "[c]hange in duties alone does not rise to the level of a materially adverse employment action," <u>D'Ambrosio v. Cresthaven Nursing & Rehab. Ctr.</u>, 14-06541 (JBS/KMW), 2016 WL 5329592, at *9–10 (D.N.J. Sept. 22, 2016), the Court finds that Plaintiff's change in responsibilities, followed by her failure

to receive the regular annual salary increase, constitutes an adverse employment action for purposes of a prima facie case.[5] See McQuilkin v. Delaware River Port Auth., 11-652 (JBS/AMD), 2013 WL 5936983, at *16 (D.N.J. Nov. 6, 2013); see also Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 539 (3d Cir. 2006) ("[T]here is a low bar for establishing a prima facie case of employment discrimination.").[6] Similarly, Plaintiff also narrowly establishes that the adverse action related to her age. Plaintiff points to Dedermann's comment about her eventual retirement[7] and Dedermann's statement that Plaintiff's responsibilities were changing to help her "alleviate some stress." Hopkins Dep. Tr. 322–23. Viewing the facts in the light most favorable to Plaintiff, these statements suffice for purposes of Plaintiff's prima facie case. See Marzano v. Computer Science Corp. Inc., 91 F.3d 497, 508 (3d Cir. 1996).

Regardless, Defendants have articulated a legitimate, nondiscriminatory reason for the adverse action[8] and Plaintiff fails to demonstrate that Defendants' proffered reasons are pretext for age discrimination. To withstand summary judgment, Plaintiff must demonstrate pretext by "point[ing] to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve [Defendants'] . . . articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of

---

[5] Plaintiff also argues that her "constructive discharge" was the adverse employment action. See Pl.'s Opp. at 15. Because this Court already determined that Plaintiff was not constructively discharged, see supra Section III.A.1, it need not address this argument.

[6] Though Scheidemantle involved a Title VII claim, the Title VII analysis also applies to NJLAD claims. See, e.g., Cortes v. Univ. of Med. & Dentistry of N.J., 391 F. Supp. 2d 298, 311 (D.N.J. 2005).

[7] As previously explained, Dedermann told Plaintiff that she could babysit for her when she retired. See supra Section I.A (citing Defs.' Stmt. ¶ 128).

[8] Defendants maintain that Plaintiff's job responsibilities changed "due to her poor productivity." Defs. Br. at 18–19; Defs.' Reply at 12. Relatedly, Defendants admit that Plaintiff received a two percent raise instead of a four percent raise because Plaintiff needed to increase her productivity with respect to customer shipments. Pl.'s Counter Stmt. ¶ 34. This reasoning is supported by the record. See Defs.' Ex. DD; Defs.' Ex. H.

the . . . action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994); see also St. Mary's Honor Ctr., 509 U.S. at 519 ("It is not enough . . . to dis believe the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination."). Here, however, Plaintiff makes no arguments whatsoever relating to pretext. See Moussavian v. China Ocean Shipping Co. Americas Inc., No. Civ. A. 06-4818JLL, 2009 WL 3074636, at *3 (D.N.J. Sept. 22, 2009) (granting summary judgment where plaintiff failed to put forward an argument regarding pretext).

In any event, the minimal evidence referenced in support of Plaintiff's prima facie case fails to carry Plaintiff's burden of establishing pretext. First, Plaintiff claims that Dedermann's "words" indicate that she favored younger employees. Pl.'s Opp. at 16. Yet, Dedermann's two "stray" comments—both of which were only tangentially related to age—are insufficient to demonstrate pretext. See Taylor v. Amcor Flexibles, Inc., 669 F. Supp. 2d 501, 511 (D.N.J. 2009) (listing cases); Perry v. Prudential-Bache Sec., Inc., 738 F. Supp. 843, 853 n.5 (D.N.J. 1989) (finding "off-hand comments of a joking nature" insufficient to raise an inference of intentional discrimination).

Second, Plaintiff maintains that Dedermann's actions reveal that she favored younger employees. Pl.'s Opp. 16. Specifically, Plaintiff argues that a younger employee within her department was offered FMLA leave, whereas she was not. See id. This argument is unavailing. While pretext may be established by showing that Defendants treated similarly situated individuals more favorably, see Wilcher v. Postmaster Gen., 441 F. App'x 879, 881 (3d Cir. 2011), Plaintiff fails to establish that the younger employee was similarly situated in all relevant respects. See Rich v. Verizon N.J. Inc., 16-1895 (FLW) (DEA), 2017 WL 6314110, at *24 (D.N.J. Dec. 11, 2017) ("To survive summary judgment, a plaintiff must present comparator evidence sufficient to prove that he or she is 'similarly situated' to his or her comparators[.]"). In determining whether

employees are similarly situated, courts look at whether the employees "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." McCullers v. Napolitano, 427 F. App'x 190, 195 (3d Cir. 2011) (internal quotation marks omitted); see Wilcher, 441 F. App'x at 882.

Here, the only information provided about the comparable younger employee is that she worked under Dedermann at the same time as Plaintiff. See Defs.' Ex. D at 73. Furthermore, the record reveals mitigating circumstances as would distinguish Dedermann's treatment of Plaintiff. Dedermann testified that the younger employee approached her about her medical condition and told her that she would need regular time off for medical procedures. See id. As a result, Dedermann stated that she went to human resources for assistance. Id. In contrast, Plaintiff never informed Dedermann about her medical testing following her TIA. Defs.' Stmt. ¶ 151. Nor did Plaintiff indicate that she was using vacation days to go to the doctor. Id. ¶¶ 157–159. It is undisputed that Plaintiff first indicated that she needed to use vacation days for medical testing in April 2014. Id. ¶ 164. Had Plaintiff also approached Dedermann about her medical issues, Plaintiff might have succeeded in demonstrating that Dedermann treated a similarly situated younger employee more favorably. This is not the case here.

Finally, Plaintiff seems to imply that any change in her productivity relating to customer shipments was a consequence of her change in duties. See Pl.'s Counter Stmt. ¶¶ 32–34. However, "[t]o discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Fuentes, 32 F.3d at 765; see also Lawrence v. State Univ. of N.Y., No. 01 Civ. 7395 AKH, 2002

WL 31812700, at *5 (S.D.N.Y. Dec. 12, 2002) ("[F]aulting others for or otherwise rationalizing problems legitimately perceived by one's employer does not establish discriminatory animus.").

Thus, Plaintiff has not presented any evidence that could persuade a reasonable jury that Defendants' rationale was merely pretext and that age discrimination more likely than not played a role in its employment decisions. Accordingly, Defendants are entitled to summary judgment as to Plaintiff's age discrimination claim.

**b. Disability Discrimination**

Plaintiff also argues that Defendants discriminated against her on the basis of her disability. To establish a prima facie case of disability discrimination under NJLAD, a plaintiff must demonstrate that: (1) she was disabled within the meaning of the statute; (2) she was qualified to perform the essential functions of her position; and (3) she suffered an adverse employment action because of the disability. See Byrnes v. Greystone Park Psychiatric Hosp., 15-7934 (JLL) (JAD), 2016 WL 1135148, at *4 (D.N.J. Mar. 22, 2016). Defendants do not dispute that the first two elements are met. Defendants argue, however, that Plaintiff fails to demonstrate that they took any adverse action against her because of her disability. The Court agrees.

As previously discussed, Plaintiff suffered an adverse employment action when she was "demoted" and given a lesser annual salary increase. Yet, Plaintiff fails to present any evidence that connects these adverse employment actions to her disability. See Mickens v. Lowe's Companies, Inc., 07-CV-6148 (DMC), 2009 WL 4911952, at *8 (D.N.J. Dec. 14, 2009) (finding no prima facie case without evidence linking the adverse employment action to plaintiff's disability). Significantly, Dedermann altered Plaintiff's job responsibilities before Plaintiff suffered her TIA, which only further undermines Plaintiff's claim that her disability played any role in Defendants' decision to "demote" her. It is also worth noting that Plaintiff herself admitted

that she did not know whether Dedermann altered her job responsibilities for discriminatory reasons.  See Hopkins Dep. Tr. at 321–22.  Plaintiff has thus "submitted nothing more than her post-hoc, 'subjective belief that [disability] played a role in these employment decisions,' which is 'not sufficient to establish an inference of discrimination.'" Paradisis v. Englewood Hosp. & Med. Ctr., 13-5936, 2016 WL 4697337, at *8 n.9 (D.N.J. Sept. 6, 2016) (quoting Groeber v. Friedman & Schuman, P.C., 555 F. App'x 133, 135 (3d Cir. 2014)), aff'd sub nom. Paradisis v. Englewood Hosp. Med. Ctr., 680 F. App'x 131 (3d Cir. 2017); see Paradoa v. Philadelphia Hous. Auth., 610 F. App'x 163, 166 (3d Cir. 2015).

Because Plaintiff fails to establish a prima facie case of disability discrimination under NJLAD, Defendants are entitled to summary judgment on this claim.[9]

### 3. Hostile Work Environment

Plaintiff contends that Defendants also violated the NJLAD by subjecting her to a hostile work environment.  Defendants maintain that they are entitled to summary judgment on this claim because Plaintiff fails to establish that she was subjected to pervasive harassment due to her age or disability.  The Court agrees.

To establish a hostile work environment claim, the plaintiff must show: (1) she suffered intentional discrimination because of her membership in a protected class; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the

---

[9] Plaintiff argues for the first time in her Opposition that Defendants discriminated against her by failing to reasonably accommodate her.  Pl.'s Opp. at 17.  However, "[t]o prevail on a failure to accommodate claim, a plaintiff must first present the prima facie elements required in any disability discrimination claim." Fitzgerald v. Shore Mem'l Hosp., 92 F. Supp. 3d 214, 237 (D.N.J. 2015). Because Plaintiff fails to establish a prima facie case for disability discrimination, she "is barred from proving that Defendants failed to accommodate [her] disability," Guarneri v. Buckeye Pipe Line Serv. Co., 205 F. Supp. 3d 606, 618 (D.N.J. 2016), and the Court need not further address this claim.

discrimination would detrimentally affect a reasonable person in like circumstances; and (5) the existence of respondeat superior liability. Mandel v. M & Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013); see also Sgro v. Bloomberg L.P., 331 F. App'x 932, 941 (3d Cir. 2009) ("New Jersey courts treat hostile work environment claims under the NJLAD the same as the Supreme Court treats hostile work environment claims under Title VII.").

Here, as discussed in connection with Plaintiff's discrimination claims, Plaintiff fails to establish by a preponderance of the evidence that she suffered intentional discrimination because of her age or disability. See Rich v. State, 294 F. Supp. 3d 266, 282 (D.N.J. 2018). Again, Plaintiff herself did not know whether Dedermann altered her job responsibilities for discriminatory reasons. See Hopkins Dep. Tr. at 321–22; see also Rich, 294 F. Supp. 3d at 282 (explaining that there can be no NJLAD violation if the conduct would have occurred regardless of plaintiff's membership in the protected class).

Regardless, no reasonable factfinder could conclude that the alleged discrimination was severe, pervasive or regular. In determining whether a work environment is hostile, courts must "consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonable interferes with an employee's work performance." Mandel, 706 F.3d at 168 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). Significantly, "offhanded comments, and isolated incidents (unless extremely serious) are not sufficient to sustain a hostile work environment claim." Caver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2005) (internal quotation marks omitted). Plaintiff maintains that she was publicly humiliated by Dedermann and specifically points to Dedermann's comment that she could babysit for her children when she retired, her relegation "to the menial task" of opening files, Dedermann's "underhanded"

comments about needing time off, and Dedermann's threat to write Plaintiff up for taking too much time off.  See Pl.'s Opp. 22–25.  Viewed together, however, the Court finds the frequency and severity of the conduct alleged to be minimal.  Compare Streater v. City of Camden Fire Dept., 567 F. Supp. 2d 667, 674 (D.N.J. 2008) (finding sufficient evidence of pervasiveness where defendants "regularly made jokes with racial themes" and "threatening comments with offensive racial content"), with McKinnon v. Gonzales, 642 F. Supp. 2d 410, 423 (D.N.J. 2009) (finding "the brief collection of unfriendly comments" insufficient to rise to necessary the level of pervasive hostility).  Indeed, Dedermann raised her voice with Plaintiff on just one occasion and Plaintiff later admitted that Dedermann had not been inappropriate.  Defs.' Stmt. ¶ 214.  Moreover, the record reflects that Plaintiff was not subjected to any harassment during the six months prior to her resignation.  See id. ¶¶ 290-298.

Accordingly, no reasonably jury could conclude that Plaintiff was the victim of a hostile work environment, and the Court will grant Defendants summary judgment on that claim.[10]

## C.  Intentional Infliction of Emotional Distress

Defendants contend that they are entitled to summary judgment on Plaintiff's claim for intentional infliction of emotional distress ("IIED").  Specifically, Defendants argue that Plaintiff fails to demonstrate that their conduct was intentional, or that Plaintiff suffered a severe emotional distress.  The Court agrees.

To establish an IIED claim in New Jersey, a plaintiff "must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." Hollingsworth v. Port Auth. of New York & New Jersey, 06-571 (JAG), 2009 WL 1702293, at *4 (D.N.J. June

---

[10] Defendants also argue that K+N cannot be held liable for Plaintiff's hostile work environment claim.  Defs.' Br. at 30–36.  The Court does not address this argument because Plaintiff has not successfully established such a claim.

16, 2009) (citing <u>Buckley v. Trenton Sav. Fund Soc.</u>, 111 N.J. 355, 544 (1988)).  Specifically, the defendant's conduct must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" <u>Buckley</u>, 111 N.J. at 366 (quoting Restatement (Second) of Torts § 46)); <u>see</u> <u>also</u> <u>Cox v. Keystone Carbon Co.</u>, 861 F.2d 390, 395 (3d Cir. 1988) ("[I]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress.').  In addition, the plaintiff's emotional distress must be "'so severe that no reasonable man could be expected to endure it.'" <u>Buckley</u>, 111 N.J. at 366 (quoting Restatement (Second) of Torts § 46))

Here, Plaintiff fails to demonstrate that the conduct complained of is "sufficiently extreme and outrageous to allow it to go to a jury." <u>Malloy v. Intercall, Inc.</u>, 08-01182 (JLL), 2010 WL 5441658, at *21 (D.N.J. Dec. 28, 2010).  Although Plaintiff claims that Dedermann "regularly" made comments about her age and disability that caused her emotional distress, Pl.'s Opp. at 36, Plaintiff has only identified one specific instance in which Dedermann referenced her retirement. Neither this comment, nor any of the other isolated incidents Plaintiff described, constitute conduct so outrageous as to go beyond all possible bounds of decency.  <u>See</u> <u>Hitchens v. Aptium Oncology, Inc.</u>, 10-571 (SDW) (MCA), 2012 WL 570344, at *11 (D.N.J. Feb. 21, 2012); <u>Malloy</u>, 2010 WL 5441658, at *21 (distinguishing an "unpleasant working environment" from one that rises to the level of outrageousness required for an IIED claim).  Furthermore, Plaintiff has not shown "that she suffered severe emotional distress as would be diagnosed or recognized by a health professional." <u>Id.</u> (citing <u>Taylor v Metzer</u>, 152 N.J. 490, 515 (1998)).  Therefore, Defendants' motion for summary judgment as to Plaintiff's IIED claim is granted.

**D. Untimely Overtime Claims**

Finally, Defendants seek summary judgment on Plaintiff's "untimely overtime claims" brought under the FLSA and the NJWHL. Defs.' Br. at 43–46. The parties previously agreed that Plaintiff's overtime claims would be limited to the period of October 14, 2012 through October 8, 2014. ECF No. 20. Defendants now argue that the Court should apply a two-year statute of limitations to Plaintiff's claims. As such, Defendants seek to further limit Plaintiff's overtime claims to the period of October 14, 2013 through October 8, 2014. Plaintiff counters that a three-year statute of limitations applies. The Court agrees with Defendants that a two-year statute of limitations applies to Plaintiff's NJWHL claim, but finds that there is an issue of fact that precludes summary judgment on Plaintiff's FLSA claim.

Both the FLSA and the NJWHL have a two-year statute of limitations. See 29 U.S.C. § 255(a); N.J.S.A. 34:11-56a25.1. Where a plaintiff can show that the defendant's conduct was willful, the FLSA's statute of limitations can be extended to three years. See 29 U.S.C. § 255(a). The NJWHL does not contain a similar provision for extension of the statute of limitations, however. See, e.g., Boone v. Solid Wood Cabinet Co., LLC, 17-4333 (KM) (JBC), 2018 WL 2455924, at *6 (D.N.J. June 1, 2018). Because Plaintiff does not suggest any grounds for application of tolling, Plaintiff's NJWHL claim is therefore limited to the period of October 14, 2013 through October 8, 2014.

As for Plaintiff's FLSA claim, the Court finds that Plaintiff has put forth sufficient evidence to demonstrate that there is a genuine dispute of material fact regarding the willfulness of the alleged violation. See Brown v. Norton, 02-5556 (JAG), 2008 WL 2228704, at *6 (D.N.J. May 28, 2008). Among other things, Plaintiff notes that it is undisputed that she worked overtime, she was not compensated for her overtime hours, and her supervisor was often present when she

worked after hours.  However, Plaintiff admits that she never spoke to anyone in human resources or payroll about an overtime issue, Defs.' Stmt. ¶ 369, and admits that she did not know whether K+N intentionally failed to pay her overtime, id. ¶ 370.  Because there is a genuine issue of material face regarding the willfulness of the alleged violation, summary judgment is denied as to Plaintiff's FLSA claim.

**III. CONCLUSION**

For the reasons set forth herein, Defendants' Motion for Partial Summary Judgment is **GRANTED in part** and **DENIED in part**.  Defendants' motion is denied with respect to Plaintiff's overtime claim under the FLSA, but granted in all other respects.

**Dated: November 28, 2018**

*/s Madeline Cox Arleo*_____
**Hon. Madeline Cox Arleo**
**UNITED STATES DISTRICT JUDGE**